UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N⁰ 09-CV-2479 (JFB) (AKT)
_____

DORA MORRIS,

Plaintiff,

VERSUS

DAVID LERNER ASSOCIATES AND DAVID LERNER, INDIVIDUALLY,

Defendants.

_____

**MEMORANDUM AND ORDER**
January 26, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Dora Morris ("plaintiff") brings this employment discrimination action against her former employer, David Lerner Associates ("DLA"), and David Lerner ("Lerner"), DLA's President and plaintiff's supervisor throughout her tenure at DLA. Plaintiff alleges that DLA and Lerner discriminated against her because of her gender by paying her less than similarly situated male co-workers and by subjecting her to a hostile work environment. Plaintiff also alleges that, when she complained to Lerner about the fact that she was being paid less than similarly situated men, she was fired in retaliation for her complaints.

Defendants have now moved to partially dismiss the complaint. They argue that plaintiff failed to exhaust her administrative remedies for her hostile work environment and retaliatory termination claims and that, in any event, her allegations regarding those claims fail to state a claim for which relief can be granted.

As set forth in more detail in the following Memorandum and Order, the Court denies defendants' motion to dismiss. In short, plaintiff's hostile work environment and retaliatory termination claims are reasonably related to the charge she filed with the Equal Employment Opportunity Commission and are, thus, deemed exhausted for purposes of this lawsuit. Additionally, plaintiff's complaint gives defendants fair notice of her hostile work environment and retaliatory termination claims and provides sufficient allegations for the purposes of surviving a

motion to dismiss.

## I. Background

### A. Factual Background

For purposes of this motion to dismiss, the Court has taken the facts described below from the plaintiff's Complaint ("Compl."). These facts are not findings of fact by the Court but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party. *See LaFaro v. N.Y. Cardiothoracic Group*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff began working at DLA in December 1994 as "Assistant to the President," David Lerner. (Compl. ¶ 19.) Throughout her tenure at DLA, plaintiff worked not only as Lerner's assistant, but also as a licensed Series 7 and Series 63 broker providing brokerage services to Lerner's clients. (*Id*. ¶¶ 20-21.) She earned commissions for this work, but her commissions were less than those of her male counterparts. (*Id.* ¶¶ 21-22.)

During plaintiff's employment, Lerner allegedly often made comments regarding women's role in the workplace (*see id.* ¶¶ 24-26); repeatedly said plaintiff should go on a trip with him but only if she would "stay in the same room" (*id.* ¶ 27); commented on plaintiff's anatomy (*id.* ¶¶ 29-30); often made plaintiff "twirl" for him (*id.* ¶ 31); and told his other personal assistant, Rande Hirsch, to purchase clothes and high-heeled shoes for plaintiff. (*Id.* ¶ 32.)

In November 2007, Lerner advised plaintiff that she would have to share 15 percent of her broker commissions with Hirsch, even though Hirsch was not a licensed broker. (*Id.* ¶¶ 35-36.). On or about Tuesday, November 20, 2007, plaintiff complained to Lerner, telling him that she was being treated differently than male brokers, who were required to share only one percent of their commissions. (*Id.* ¶ 36.) After hearing plaintiff's complaints, Lerner told plaintiff that she was a "great worker and a good Mommy" and that he did not "want to lose her." (*Id.* ¶ 38.) Lerner suggested that plaintiff take the upcoming holiday weekend to think about what she wanted to do. (*Id.*) Lerner stated that he would talk with plaintiff about the situation on the following Monday. (*Id.*). However, two days later, DLA's Human Resources Vice President contacted Morris and told her that "David [Lerner] has accepted your resignation." (*Id.* ¶ 39.) In a follow-up call two days later, the HR Vice President told plaintiff that her job was "eliminated." (*Id.* ¶ 41.)

### B. Procedural Background

Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on January 10, 2008. (*Id.* ¶ 6.) She received a Right to Sue Letter on March 13, 2009. (*Id.* ¶ 7.) Plaintiff filed a complaint in this Court on June 1, 2009. The complaint asserts the following claims against DLA and Lerner: (1) disparate treatment on the basis of sex in violation of Title VII of the 1964 Civil Rights Act; (2) disparate treatment in violation of the New York State Human Rights Law; (3) disparate treatment under the New York City Human Rights Law; (4) hostile work environment under Title VII; (5) hostile work environment under the New York State Human Rights Law; (6) hostile work environment under the New York City Human

Rights law; (7) retaliatory termination under Title VII; (8) retaliatory termination under the New York State Human Rights Law; (9) retaliatory termination under the New York City Human Rights Law; and, against Lerner only, for (10) aiding and abetting under the New York State Human Rights Law and (11) aiding and abetting under the New York City Human Rights Law.

In a July 27, 2009 letter, plaintiff voluntarily withdrew her claims under the New York City Human Rights Law—namely, claims three, six, nine, and eleven—against all parties; her Title VII claims—namely, claims one, four, and seven—against Lerner; and her request for punitive damages under counts two, five, and eight.

Therefore, the claims still pending in this case are (1) a Title VII discrimination claim against DLA; (2) an NYSHRL discrimination claim against DLA and Lerner; (3) a Title VII hostile work environment claim against DLA; (4) an NYSHRL hostile work environment claim against DLA and Lerner; (5) a Title VII retaliatory termination claim against DLA; (6) an NYSHRL retaliatory termination claim against DLA and Lerner; and (7) an NYSHRL aiding and abetting claim against Lerner.

On September 30, 2009, defendants moved to partially dismiss the complaint. Specifically, defendants argue that plaintiff has failed to exhaust her administrative remedies with respect to her hostile work environment claims and retaliation claims. Defendants also argue that plaintiff's complaint fails to state a claim for hostile work environment and retaliatory termination. Plaintiff submitted her opposition on December 7, 2009, and defendants filed a reply on January 7, 2010. The Court heard oral argument on January 22, 2010.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S. Ct. 1937 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. District courts are to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to

an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Finally, in connection with a motion to dismiss under Rule 12(b)(6), as noted above, the Court may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis*, 421 F.3d at 100; *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Moreover, with respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims. *See, e.g.*, *McCarty v. Dana Holding Corp.*, No. 08 Civ. 690, 2008 WL 4865038, at *3 (E.D. Mo. Nov. 7, 2008) (under Rule 12(b)(6) standard, "it is clear that the Court may properly incorporate the EEOC charge into its analysis"); *Williams v. Thompson*, No. Civ. A. AW-03-2084, 2004 WL 3178072, at *4 n.2 (D. Md. June 10, 2004) ("Courts have recognized that EEOC charges and right-to-sue letters are public documents that may be considered in a motion to dismiss without converting the action to a motion for summary judgment.") (citations omitted).

### III. DISCUSSION

As set forth below, the Court finds that plaintiff's hostile work environment and retaliation claims are both adequately exhausted and adequately pled.

### A. Exhaustion

Generally, to bring a Title VII discrimination claim in federal district court, a plaintiff must first exhaust her administrative remedies by "filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir.2001) (quoting 42 U.S.C. § 2000e-5(e)). However, "'claims that were not asserted before the EEOC [or an appropriate State or local agency] may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). "Reasonably related conduct is that 'which would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001)); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (stating claim is reasonably related where "administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised).[1] In determining whether a claim is

---

[1] Two other kinds of claims may be considered "reasonably related": those alleging "retaliation by an employer against an employee for filing an EEOC charge," and those alleging "further incidents of discrimination carried out in precisely

4

"reasonably related" to the EEOC charge, "'the focus should be on the factual allegations made in the [EEOC] charge itself . . .'" and on whether those allegations "gave the [EEOC] 'adequate notice to investigate'" the claims asserted in court. *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201-02 (2d Cir. 2003)).

In this case, defendants claim that neither plaintiff's hostile work environment claim nor her retaliation claim is reasonably related to the charge she filed with the EEOC. As discussed below, the Court disagrees.

1. Hostile Work Environment

Despite defendants' arguments to the contrary, the Court finds that plaintiff's hostile work environment claim is reasonably related to the charge she filed with the EEOC. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). To give the EEOC adequate notice of a hostile work environment claim, the EEOC charge must reference "repeated conduct or the cumulative effect of individual acts" directed toward the plaintiff. *See Mathirampuzha*, 548 F.3d at 77 (finding hostile work environment claim not reasonably related to discrimination claim

---

the same manner alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993). Neither is at issue in this case.

filed with the EEOC because plaintiff's "EEO complaint recount[ed] nothing more than a single act of physical and verbal abuse"); *see also Pilgrim v. McGraw-Hill Cos., Inc*., 599 F. Supp. 2d 462, 491 (S.D.N.Y. 2009) (finding hostile work environment claim reasonably related to EEOC charge because charge referred to "systemic" discrimination and alleged that supervisor "demean[ed]" plaintiff with "foul and offensive" language); *cf. Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (finding hostile work environment claim not reasonably related to EEOC charge because EEOC charge only made general allegations regarding employer's disparate treatment of men and women).

Here, a letter attached to plaintiff's EEOC charge states that "Mr. Lerner frequently made unwelcome personal comments directed to me." The attachment goes on to describe some of those comments. The comments cited by plaintiff relate not just to Lerner's alleged beliefs about women's proper role in society but, "often," also concern plaintiff's personal appearance and dress. These references to repeated instances of inappropriate conduct were sufficient to put the EEOC on notice of a possible hostile work environment claim. Indeed, the record indicates that the EEOC explicitly acknowledged its awareness of these allegations—specifically, in a letter attached to plaintiff's right to sue notice, an EEOC district director noted that plaintiff alleged that "Mr. Lerner frequently made unwelcome comments to you regarding your physical appearance and his desire to keep you in the assistant position." Therefore, because the plaintiff's EEOC charge contained the factual basis for a hostile work environment claim and because the EEOC was clearly aware of

those facts, plaintiff's hostile work environment claim is "reasonably related" to the sex discrimination claim raised in her EEOC charge. As such, her hostile work environment claim is considered exhausted for purposes of this lawsuit.

2. Retaliation

Plaintiff's retaliation claim is also reasonably related to the charge she filed with the EEOC. Title VII prohibits discriminating against an employee because of the employee's opposition to a practice that the statute makes unlawful. 42 U.S.C. § 2000e-3(a). Here, the alleged retaliatory conduct—plaintiff's termination—occurred before plaintiff filed an EEOC charge. In cases such as this one, a retaliation claim is not "reasonably related" to the EEOC charge simply because the EEOC charge refers to the fact that plaintiff suffered an adverse employment action, such as termination. *See, e.g.*, *O'Hara v. Memorial Sloan-Kettering Cancer Ctr.*, 27 F. App'x 69, 70-71 (2d Cir. 2001) (summary order) (finding retaliation claim not reasonably related to discrimination claim because EEOC charge "failed to put the agency on notice that [plaintiff] engaged in the type of protected activity that is the predicate to a retaliation claim"); *Shepheard v. City of N.Y.*, 577 F. Supp. 2d 669, 680 (S.D.N.Y. 2008) (finding retaliation claim not reasonably related because, *inter alia*, the "[c]harge contains no allegations or facts that would lead an investigator to inquire as to any allegedly retaliatory actions"); *Cordoba v. Beau Dietl & Assocs.*, No. 02 Civ. 4951 (MBM), 2003 WL 22927874, at *10-11 (S.D.N.Y. Dec. 2, 2003) (finding retaliation claim not reasonably related because EEOC charge said only that employer "'committed unlawful discriminatory practices and retaliation against me based upon my age and national origin'" and did not "contain a single reference" to plaintiff's complaints to supervisor); *Burgess v. N.Y. Stock Exchange*, 181 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (finding retaliation claim not reasonably related because EEOC charge "contained nothing beyond the proposition that [plaintiff] was [terminated] because of his race"); *Ghose v. Century 21, Inc.*, 108 F. Supp. 2d 373, 376 (S.D.N.Y. 2000) (finding retaliation claim not reasonably related because EEOC charge "referr[ed] only to his discharge and claims that he was fired on account of his national origin"); *cf. Jenkins v. N.Y. City Transit Auth.*, 646 F. Supp. 2d 464, 472 (S.D.N.Y. 2009) (noting that cases finding "pre-EEOC charge retaliation claims not to be reasonably related to claims explicitly made in the charge . . . have generally involved charges which were devoid of any reference to a retaliatory motive or any allegation that the plaintiff had engaged in a protected activity.")

Conversely, when the EEOC charge alleges facts from which a reader can infer a link between protected activity—for example, a complaint about perceived discriminatory treatment—and a subsequent adverse employment action, a retaliation claim asserted in a subsequent lawsuit will be "reasonably related" to the EEOC charge. *See, e.g.*, *Gillman v. Inner City Broadcasting Corp.*, No. 08 Civ. 8909 (LAP), 2009 WL 3003244, at *6 & n.14 (S.D.N.Y. Sept. 18, 2009); *Jenkins*, 646 F. Supp. 2d at 472 (finding retaliation claim reasonably related because affidavit attached to EEOC charge alleged that plaintiff "asked [her employer] to accommodate her religious beliefs by allowing her to wear a skirt as part of her uniform, that her request was denied, and that she was thereafter terminated because she refused to

6

comply with the [employer's] uniform policy"); *White v. Home Depot*, No. 04-CV-401, 2008 WL 189865, at *3 (E.D.N.Y. Jan. 17, 2008) ("Because of the close proximity between Plaintiff's opposition to the Defendant's allegedly discriminatory practices and his subsequent alleged termination, Plaintiff's retaliation claim is reasonably related to his original EEOC complaint."); *Pruitt v. Mailroom Tech., Inc.*, No. 3:06cv1530 (WWE), 2007 WL 2302285, at *4 (D. Conn. Aug. 9, 2007) (finding ADA retaliation claim reasonably related because "[t]he administrative investigation into plaintiff's request for disability accommodation, the employer response to that request and the subsequent adverse employment action could have reasonably grown into consideration of whether the request for accommodation formed a basis for retaliatory treatment"); *Ridgway v. Met. Museum of Art*, No. 06 Civ. 5055 (SAS) 2007 WL 1098737, at *5 (S.D.N.Y. Apr. 10, 2007) (finding ADA retaliation claim reasonably related to administrative charge because the charge "include[d] the fact that [plaintiff] engaged in protected conduct (i.e., he requested 'disability accommodations') and that these requests and subsequent denials were part of the basis for his termination"); *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 105, 115 (D. Conn. 2006) ("Thus, although plaintiff did not 'label' her charge as including a complaint of retaliation, plaintiff alleged the conduct underlying her retaliation claim in this action, *i.e.*, that she requested an accommodation for her insomnia, that she was thereafter transferred to a lower-paying position, and that she was then terminated. Thus, an investigation would reasonably have been expected to include inquiry into this purportedly retaliatory conduct and defendants were given notice that plaintiff was charging them with such conduct."); *Robinson v. Getinge/Castle, Inc.*, No. 02-CV-6049, 2005 WL 272964, at *7 (W.D.N.Y. Feb. 2, 2005) (finding retaliation claim reasonably related to plaintiff's claim of racially discriminatory termination because "[t]he scope of the agency's investigation would have included inquiry into the company's motivation for terminating plaintiff"); *Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens*, No. 01-CV-326 (FB) (RLM), 2003 WL 22019073, at *5 (E.D.N.Y. Aug. 26, 2003) (finding ADA retaliation claim reasonably related to EEOC charge where charge alleged that, after employee requested a reasonable accommodation, "'[i]nstead of allowing me to return to work[,] my former employer placed me on long term disability and subsequently terminated my services . . . .'"); *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 132-33 (E.D.N.Y. 2002) (finding retaliation claim reasonably related where EEOC charge alleged that plaintiff complained to manager about perceived racial bias and was fired the same day); *Hansen v. Danish Tourist Bd.*, 147 F. Supp. 2d 142, 154 (E.D.N.Y. 2001) (finding ADEA retaliation claim reasonably related to EEOC charge because EEOC charge described both allegedly discriminatory promotion decision and subsequent allegedly retaliatory conduct); *see also Lopez v. Flight Serv. & Sys.*, No. 07-CV-6186 CJS, 2008 WL 203028, at *6 & n.4 (W.D.N.Y. Jan. 28, 2008); *Ausfeldt v. Runyon*, 950 F. Supp. 478, 486 (N.D.N.Y. 1997).

In this case, when asked in the EEOC charge form to categorize the defendants' alleged acts of discrimination, plaintiff checked a box marked "sex," but not a box marked "retaliation." However, her failure to check the "retaliation" box is not dispositive. *See, e.g.*, *Williams*, 458 F.3d at 71; *Jenkins*,

7

464 F. Supp. 2d at 473. Instead, even if the box was not checked, the claim is still exhausted if the EEOC charge put the agency on notice as to the existence of such a claim. *See, e.g.*, *Williams*, 458 F.3d at 71; *Jenkins*, 464 F. Supp. 2d at 473. Here, a reader could infer from the allegations in the EEOC charge that retaliatory intent motivated defendants' actions. The affidavit attached to the EEOC charge alleges that Lerner told plaintiff to give 15 percent of her brokerage commission to Hirsch, Lerner's "unlicensed personal assistant"; that plaintiff believed Lerner's request resulted in her being treated differently than male brokers; and that, when plaintiff attempted to discus the issue with Lerner, she was "summarily fired." In short, the EEOC affidavit suggests that plaintiff attempted to complain about perceived disparate treatment and her dismissal followed soon thereafter. Thus, the charge contains the factual basis for a retaliation claim, and, additionally, it would be reasonable given the circumstances to expect the EEOC to inquire into defendants' possible retaliatory motivation for firing plaintiff. As such, plaintiff's retaliation claim in this case is reasonably related to that charge and is exhausted for purposes of this lawsuit.

B. Failure to State a Claim

1. Standard

To withstand a motion to dismiss, a plaintiff in a discrimination case need not plead a *prima facie* case of discrimination. *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 508, 510 (2002)); *see also Krasner v. HSH Nordbank AG*, No. 08 Civ. 8499 (GEL), 2010 WL 86845, at *5 (Jan. 7, 2010). Under the standard set forth by the Supreme Court in *Swierkiewicz*, a plaintiff alleging employment discrimination need only satisfy Federal Rule of Civil Procedure 8, which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz*, 534 U.S. at 508 (quoting Fed. R. Civ. P. 8(a)(2)). "[A] complaint alleging employment discrimination is sufficient to withstand a motion to dismiss if it gives 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Wilson v. Family Dollar Stores*, No. 06-CV-0639 (DGT), 2007 U.S. Dist. LEXIS 23083, at *26-*27 (E.D.N.Y. Mar. 29, 2007) (quoting *Swierkiewicz*, 534 U.S. at 512).

The recent Supreme Court decisions in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), do not obviate this standard. Indeed, the Court in *Twombly* explicitly reaffirmed *Swierkiewicz*. 550 U.S. at 570 (citing *Swierkiewicz*, 534 U.S. at 508); *see also Boykin v. Key Corp.*, 521 F.3d 202, 213 (2d Cir. 2008) (noting that the *Twombly* Court "affirmed the vitality of *Swierkiewicz*"); *Gilman*, 2009 WL 3003244, at *3 ("*Iqbal* was not meant to displace *Swierkiewicz*'s teachings about pleading standards for employment discrimination claims because in *Twombly*, which heavily informed *Iqbal*, the Supreme Court explicitly affirmed the vitality of *Swierkiewicz*."). Thus, to survive a Rule 12(b)(6) motion, plaintiff need not establish a *prima facie* case of discrimination, but her complaint must give fair notice of her claims, and those claims must be facially plausible. See *Gilman*, 2009 WL 3003244, at *3.

2. Application

The Court finds that plaintiff has adequately pled her claims for hostile work environment and retaliatory termination.

8

i. Hostile Work Environment

Under Title VII, it is unlawful for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2. "The phrase 'terms, conditions, or privileges of employment' is broad enough to encompass, and render actionable, an employer's requirement that an employee 'work in a discriminatorily hostile or abusive environment,' so long as the discriminatory conduct at issue is 'severe or pervasive enough to create an objectively hostile or abusive work environment.'" *Gregory*, 243 F.3d at 691 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)). This is the case even where an employer does not engage in "'tangible employment action[s]'" constituting "'a change in the terms and conditions of employment' by formally altering a worker's employment status." *Id.* (quoting *Burlington Indus., Inc.*, 524 U.S. at 753-54). Thus, an employer may be liable for creating a hostile work environment, even in the absence of "tangible employment actions," if a plaintiff suffers harms as a result of conduct that is (1) "'objectively' severe or pervasive – that is, if it creates 'an environment that a reasonable person would find hostile or abusive,'" (2) if it creates an environment "that the plaintiff 'subjectively perceives' as hostile or abusive" and (3) "that creates such an environment because of plaintiff's sex." *Id.* at 691-92 (citations omitted). Under *Harris*, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Moreover, "the plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer," for example, by showing that the harassing conduct was by supervisory co-workers or, in the case of non-supervisory co-workers, by "showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Fairbrother v. Morrison*, 412 F.3d 39, 48-49 (2d Cir. 2005), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).[2]

Here, plaintiff's complaint states a plausible claim that she was subjected to a hostile work environment. Plaintiff cites a series of sex-based comments that were allegedly made by defendant Lerner to her in the workplace (*See, e.g.*, Compl. ¶¶ 24, 27, 29, 30.) Moreover, the complaint alleges that these comments were not one-time occurrences. For example, the complaint alleges that, "on numerous occasions, Lerner propositioned Morris." (Compl. ¶ 27.) Additionally, the complaint alleges that Lerner "often made Morris 'twirl' for him so he could see how she looked 'from all angles.'" (Compl. ¶ 31.) Furthermore, Lerner allegedly had another assistant purchase women's clothes and shoes for plaintiff that plaintiff did not want. (Compl. ¶ 32). The complaint also alleges that Lerner "frequently suggested that Morris kiss him in the morning . . . ." (Compl. ¶ 33.) Finally, the person who allegedly made the hostile and abusive comments—Lerner—was plaintiff's direct

---

[2] These same standards govern plaintiff's New York State Human Rights Law hostile work environment claim. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

9

supervisor and the president of the Company. In sum, the complaint, which alleges that plaintiff was repeatedly the target of sex-based comments by Lerner, sufficiently alleges a plausible hostile work environment claim. *Cf. Gratton v. JetBlue Airways*, No. 04 Civ. 7561 (DLC), 2005 WL 1251786, at *9 (S.D.N.Y. May 25, 2005) (dismissing hostile work environment claim where plaintiff's allegations centered around requests by supervisor and human resources manager that plaintiff provide doctors' notes explaining the limitations imposed by her pregnancy); *Prince v. Cablevision Sys. Corp.*, No. 04 Civ. 8151 (RWS), 2005 WL 1060373, at *10 (S.D.N.Y. May 6, 2005) (granting defendant judgment on the pleadings because, *inter alia*, other than one incident involving a supervisory employee during an off-hours outing, plaintiff's hostile work environment claim "fail[ed] to allege a single instance in which plaintiff ever heard or otherwise witnessed a single derogatory comment or other instance of sex-based offensive conduct in the workplace at any time"). Therefore, plaintiff's plausible hostile work environment claim survives the motion to dismiss.

ii. Retaliation

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Generally, in order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). Title VII protects not only those employees who opposed employment practices made unlawful by the statute but also those who have "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" even if those actions were not, in fact, unlawful. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).[3]

Here, the complaint alleges that plaintiff complained to Lerner that she was being treated differently than male brokers. (Compl. ¶ 36.) An informal complaint to a supervisor about perceived discriminatory treatment is protected activity under Title VII. *See Sclafani v. P.C. Richard & Son*, - - - F. Supp. 2d - - -, No. 07-cv-3767 (JFB) (ARL), 2009 WL 3756774, at *8 (E.D.N.Y. Nov. 9, 2009) (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)).[4] The complaint also

---

[3] These same standards govern plaintiff's New York State Human Rights Law retaliation claim. *Schiano*, 445 F.3d at 609.

[4] At oral argument, defendants asserted that plaintiff was not engaged in protected activity when she complained to Lerner because Lerner offered her a "choice" of sharing her commissions with Hirsch or ending her employment. However, an employer cannot immunize itself from a retaliation claim by offering an employee the "choice" of accepting allegedly discriminatory treatment rather than termination. *See generally Wilkinson v. Serv. Mgmt. Sys., Inc.*, 80 F. App'x 591, 591-92 (9th Cir. 2003) (reversing district court's grant of summary judgment to employer on plaintiff's retaliation claim in which plaintiff was offered a choice between accepting a

10

alleges that, only days after her discussion with Lerner, plaintiff suffered an adverse employment action when she was terminated. (*See* Compl. ¶¶ 38-41.) The close temporal proximity between plaintiff's protected activity and her termination raises a plausible inference that retaliation for the protected activity was the cause of her termination. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996))). In sum, the complaint gives defendants notice of the bases for plaintiff's retaliation claim and states a plausible claim for retaliation. As such, plaintiff has adequately pled her retaliation claims.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied. The parties shall proceed with discovery at the direction of Magistrate Judge Tomlinson.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 26, 2010
Central Islip, New York

* * *

Attorneys for the plaintiff are Jonathan Sack and Eric R. Stern, Sack and Sack, Esqs., 110 East 59th St., 19th Floor, New York, NY 10022-2050. Attorneys for defendant David Lerner Associates are Mark S. Mancher and Kathryn J. Russo, Jackson Lewis LLP, 58 S. Service Rd., Suite 410, Melville, NY 11747. Michael G. Shannon, Thompson Hine LLP, 335 Madison Avenue, 12th Floor, New York, NY 10017-4611, represents David Lerner individually.

---

geographic transfer or termination); *Hinsdale v. City of Liberal, KS*, 19 F. App'x. 749, 756 & n.5 (10th Cir. 2001) (concluding, in context of Fair Labor Standards Act retaliation claim, that plaintiff suffered an adverse employment action when offered a choice between forced retirement or demotion). Additionally, defendants argue that plaintiff did not engage in protected activity because she was not "similarly situated" to the male brokers. However, as noted above, plaintiff engaged in protected activity as long as she had a good faith belief that defendants' actions violated the law. Furthermore, it is premature for the Court to undertake a "similarly situated" analysis at this stage of the litigation. *See, e.g., Borum v. Vill. of Hempstead*, 590 F. Supp. 2d 376, 383 (E.D.N.Y. 2008) (declining to dismiss Title VII disparate treatment claim); *Jackson v. AFSCME Local 196*, Civil Action No. 3:07-CV-471 (JCH), 2007 WL 2221160, at *3 (D. Conn. July 26, 2007) (rejecting argument that plaintiff "fail[ed] to establish that the persons to whom she compares herself were similarly situated" because "this is an issue of fact that cannot be resolved at the motion to dismiss stage; this determination is best left for summary judgment . . . ."); *Gratton*, 2005 WL 1251786, at *8 ("Whether or not [plainitff] has correctly defined which employees are similarly situated to her in their ability or inability to work is a question of fact that is not appropriately resolved on a motion to dismiss." (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2005))).